**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

ZIAD ABDULLAHI,     :
            :
    Plaintiff,    :
            :
   v.       :  CIVIL ACTION NO.
            :  2:12-CV-0162-RWS
BANK OF AMERICA, N.A.;  :
FEDERAL HOME LOAN   :
MORTGAGE CORPORATION; :
and PENDERGAST &    :
ASSOCIATES, P.C.,    :
            :
    Defendants.   :

## <u>ORDER</u>

This case if before the Court on Defendants Bank of America ("BOA")[1]

and Federal Home Loan Mortgage Corporation's ("Freddie Mac") Motion to

Dismiss the Complaint [6]; Defendant Pendergast & Associates' ("Pendergast")

Motion to Dismiss the Complaint [7]; Pendergast's Motion to Strike and/or

Dismiss Plaintiff's Amended Complaint [15]; BOA and Freddie Mac's Motion

to Strike Amended Complaint, or, in the alternative, Motion to Dismiss

---

[1] Plaintiff initially named "BAC Home Loans" as a Defendant in this action. BAC Home Loans is not a legal entity. BAC Home Loans Servicing, LP merged with BOA on July 1, 2011. Therefore, BOA responds in its own original capacity and as successor to BAC Home Loans Servicing, LP.

Plaintiff's First Amended Complaint [16]; and Plaintiff's Motion to Amend First Amended Complaint [21].

As a preliminary matter, the Court must decide whether to rely on the original Complaint or Plaintiff's Amended Complaint for purposes of the motions to dismiss.  Defendants move to strike the Amended Complaint as untimely or, in the alternative, to dismiss the Amended Complaint.  Under Federal Rule of Civil Procedure ("Rule") 15(a)(1), a party may amend its pleading as a matter of course within a certain time period.  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Although Plaintiff did not expressly request leave to amend his Complaint, under Rule 15, "the court should freely give leave when justice so requires."  Id.  The parties have submitted motions based on the Amended Complaint, which have been fully briefed.  At this point, Defendants will not be prejudiced and no delay will result from allowing the Amended Complaint to remain.

Therefore, the Court will allow Defendant to amend his Complaint, and Defendants' Motions to Dismiss the Complaint ([6] and [7]), which were

directed to the original Complaint are **DENIED as moot.**  The Court now

considers the remaining motions before it.

### Background

This dispute arises out of the non-judicial foreclosure sale of Plaintiff's

property located at 5820 Catalpa Court, Cumming, Georgia 30040 (the

"Property").[2]  On June 6, 2012, Plaintiff filed suit in Superior Court of Forsyth

County.  (Complaint, Dkt. [1-1] at 5.)  Defendants BOA and Freddie Mac

removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1367,

1441, and 1446.  (Notice of Removal, Dkt. [1].)  Defendant Pendergast then

filed a Stipulation Consenting to Removal [1-2].

On or about December 30, 2005, Plaintiff entered into a loan agreement

with Peachtree Residential Mortgage, L.P. ("PRM") in the amount of

$316,250.00.  At the same time, Plaintiff executed a Security Deed to secure the

loan, which named PRM as the Lender and Mortgage Electronic Registration

Systems, Inc. ("MERS"), acting solely as nominee for Lender and Lender's

successors and assigns, as the Grantee under the security instrument.  (Security

Deed, Dkt. [21-2] at 1.)  Plaintiff alleges that on January 27, 2006, Freddie Mac

---

[2] Unless otherwise noted, all background facts are accepted as true and are
taken from Plaintiff's Amended Complaint [14].

3

became the holder of the loan agreement.  (See Dkt. [14-1] at 1 ("Yes.  Our records show that Freddie Mac is the owner of your mortgage and it was acquired on January 27, 2006.  This date is also referred to as the Freddie Mac settlement date.").)

On October 1, 2010, Pendergast, as attorney and representative of BAC Home Loans Servicing, LP ("BAC"), sent a Notice of Foreclosure Sale to Plaintiff.  ([14-1] at 7.)  The notice identified BAC as the Lender and "holder of a Note secured by a Deed to Secure Debt," and stated that a non-judicial foreclosure sale would take place on the first Tuesday of November 2010.  (Id.) On November 5, 2010, Pendergast, again on behalf of BAC, sent an identical Notice of Foreclosure Sale to Plaintiff, except it indicated that the sale would take place on the first Tuesday of December 2010.  ([14-1] at 7.)

The record shows that the Security Deed was transferred and assigned by MERS to BAC on April 29, 2011.  (Transfer and Assignment, Dkt. [14-1] at 11.)  On May 4, 2011, Plaintiff received a third Notice of Foreclosure Sale from Pendergast, as representative of BAC.  ([14-1] at 12.)  The third Notice stated that a foreclosure sale would be held on the first Tuesday of June 2011. (Id.)

4

The same day he received the third Notice of Foreclosure Sale from Pendergast, Plaintiff received a letter from BOA requesting additional documentation to complete an "eligibility review" for the federal government's Home Affordable Modification Program.  ([14-1] at 14.)  The letter states, "We want you to know that if we do not receive the requested information by June 3, 2011, you will no longer be eligible for the Home Affordable Modification Program and we will resume normal activities for collecting past due loan payments."  (Id.)  The BOA letter also says, "Do not ignore any foreclosure notices.  While you will not lose your home during the loan modification evaluation, to protect your rights under applicable foreclosure law, you may need to respond to foreclosure notices or take other actions."  (Id.)

On August 2, 2011 at 12:35 p.m., Stephanie Beal, a Home Servicing Specialist with BOA's Loan Modification Department, emailed Plaintiff's attorney.  ([14-2] at 1.)  The email states: "This loan is in the modification process, and any information you received to the contrary is incorrect."  (Id.)  Ms. Beal informed Plaintiff's attorney that the modification review was not complete, and would not be complete until a final review was done by U.S. Treasury, and that she, not other agents at BOA, was the point of contact for the

loan.  (<u>Id</u>.)  At 2:52 p.m. that same day, Ms. Beal emailed Plaintiff's attorney to

say that she had heard from the foreclosure department that the Property had

already been sold, "but it was possible to have it rescinded."  ([14-2] at 2.)  She

also stated, "The underwriter has completed the review for MHA and has

determined that all of the documents are complete.  They put in an escalated

request to have a foreclosure rescission, in addition to the one my supervisor

made yesterday."  (<u>Id</u>.)

The non-judicial sale of the Property occurred on August 2, 2011.  The

following day, Ms. Beal again emailed Plaintiff's attorney.  ([14-2] at 4.)  The

email says:

> I contacted the foreclosure attorney for this file, and
> was informed by the manager there that the
> foreclosure has been rescinded.  He also confirmed
> that no new foreclosure date has been set at this time.
> Our system at Bank of America still reflects a
> foreclosure date of 08/02/11 and the loan is flagged as
> "foreclosure sale has occurred, loan not conveyed."  It
> may take some time, possibly around 48 hours, for
> this to be updated.

(<u>Id</u>.)  Plaintiff's attorney forwarded Ms. Beal's email to Plaintiff with a note

saying, "Congratulations your property was given back to you."  ([14-2] at 5.)

6

On September 9, 2011, a Deed Under Power of Sale was filed with the Clerk of Superior Court of Forsyth County, stating that BOA had purchased the Property on August 2, 2011 for $327,578.69. ([14-2] at 7.) On the same day, BOA filed a Special Warranty Deed with the Clerk transferring ownership of the Property to Freddie Mac for consideration of $10.00. ([14-2] at 10.) On March 16, 2012, Pendergast sent a letter to Plaintiff informing him that Freddie Mac was the owner of the Property. ([14-3] at 1.) On March 28, 2012, a Dispossessory Proceeding was filed by Freddie Mac against Plaintiff in the Magistrate Court of Forsyth County. ([14-3] at 2.) The filing indicated that Plaintiff was a tenant at sufferance, due to a foreclosure sale on August 2, 2011. (Id.) On April 4, 2012, the Forsyth County Sheriff's Department served Plaintiff with notice of Dispossessory.

On April 9, 2012, new counsel for Plaintiff contacted H. Hall at Pendergast to inform the firm of Ms. Beal's communications with Plaintiff's former attorney and Ms. Beal's representation that the foreclosure sale had been rescinded. ([14-3] at 5.) Plaintiff's counsel's firm sent a similar letter to BOA and Freddie Mac on April 11, 2012. ([14-3] at 6.) On April 24, 2012, the Forsyth County Magistrate Court issued a judgment on behalf of Freddie Mac

7

ordering a writ of possession against Plaintiff, not to be executed until June 10, 2012.

Plaintiff then filed this suit. Plaintiff brings claims for wrongful foreclosure (Count I), quiet title relief under the Quiet Title Act of 1966 (II), constructive fraud (Count III), promissory estoppel (Count IV), and violation of the Fair Debt Collection Practices Act (Count V) against all Defendants. Plaintiff seeks damages and injunctive relief to enjoin Freddie Mac from dispossessing Plaintiff. Defendants move to dismiss all of the claims against them.

## Discussion

### I.      Legal Standard - Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also Fed. R. Civ. P. 12(d).  However, documents attached to a complaint are considered part

of the complaint.  Fed. R. Civ. P. 10(c).  Documents "need not be physically

attached to a pleading to be incorporated by reference into it; if the document's

contents are alleged in a complaint and no party questions those contents, [the

court] may consider such a document," provided it is central to the plaintiff's

claim.  D.L. Day, 400 F.3d at 1276.  At the motion to dismiss phase, the Court

may also consider "a document attached to a motion to dismiss . . . if the

attached document is (1) central to the plaintiff's claim and (2) undisputed."  Id.

(citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).  "'Undisputed'

means that the authenticity of the document is not challenged."  Id.

## II.    Analysis - Motions to Dismiss

### A.    Defendants BOA and Freddie Mac ("Bank Defendants")

#### 1.    Wrongful foreclosure (Count I)

To assert a wrongful foreclosure claim, Plaintiff must "establish a legal

duty owed to [him] by the foreclosing party, a breach of that duty, a causal

connection between the breach of that duty and the injury [he] sustained, and

damages."  Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 844

(Ga. Ct. App., 2004).  Plaintiff raises several theories to support his claim for

wrongful foreclosure.  First, Plaintiff alleges that "BOA never received an

10

assignment giving it the power of sale." (Am. Compl., Dkt. [14] ¶ 31.)  Second,
Plaintiff alleges that BOA breached its duty to exercise fairly and in good faith
the power of sale because the foreclosure was rescinded.  (Id. ¶¶ 32-33.)  Third,
Plaintiff claims that BOA was not entitled to foreclose because Freddie Mac
was the true owner of the loan.  (Id. ¶ 34.)  Finally, Plaintiff alleges that he
never received proper notice regarding the foreclosure because the Notices of
Sale did not correctly identify the owner of the loan as required by O.C.G.A. §
44-14-162.2.  (Id. ¶ 35.)

At the outset, Bank Defendants argue that Plaintiff has not alleged any
facts to support a claim for wrongful foreclosure against Freddie Mac.  (Bank
Def.s' MTD Am. Compl., Dkt. [16-1] at 8.)[3]  Freddie Mac was not the
foreclosing party and Plaintiff has not alleged that Freddie Mac owed him any
legal duty.  Plaintiff simply alleges that the Special Warranty Deed by which
Freddie Mac took ownership of the Property was invalid.  (Am. Compl., Dkt.
[14] ¶ 37.)  However, the validity of the post-sale transfer does not impact the

---

[3] Bank Defendants incorporate by reference their motion to dismiss the original
Complaint [6-1] into their motion to strike and/or dismiss the Amended Complaint
[16-1].

11

legality of the foreclosure sale itself.  Therefore, the Court agrees that Plaintiff

has not stated a claim for wrongful foreclosure against Freddie Mac.

Next, as to BOA, Bank Defendants argue that Plaintiff does not have

standing to challenge any assignment of the Security Deed.  (Bank Def.s' MTD

Compl., Dkt. [6-1] at 11.)  Plaintiff is not a party to the assignment and he is not

a third-party beneficiary under the contract.  As a general rule, under Georgia

law, "an action on a contract ... shall be brought in the name of the party in

whom the legal interest in the contract is vested, and against the party who

made it in person or by agent."  O.C.G.A. § 9-2-20(a).  Therefore, the Court

agrees that Plaintiff lacks standing to challenge or enforce assignment of the

contract.  See Joseph v. Fed. Home Loan Mortg. Corp., No. 1:12-CV-1022-

RWS, 2012 WL 5429639, at *2 (N.D. Ga. Nov. 6, 2012) (finding plaintiff could

not support claim for wrongful foreclosure by challenging assignment of the

security deed because she was not a party to the contract and lacked standing to

challenge validity of the assignment).

Regarding Plaintiff's allegation that BOA was not entitled to foreclose

because Freddie Mac was the "owner of the loan," Bank Defendants argue that

at the time of foreclosure, BOA had full power of sale as successor to BAC.

(Bank Def.s' MTD Compl., Dkt. [6-1] at 9.)  On April 29, 2011, MERS

transferred the Security Deed to BAC [14-1].  On July 1, 2011, BOA merged

with BAC.  Under O.C.G.A. § 14-2-1106(a)(2), "every contract right possessed

by each corporation or entity party to the merger is vested in the surviving

corporation or entity without reversion or impairment, without further act or

deed, and without any conveyance, transfer, or assignment having occurred."

Therefore, without taking any further action, BOA became the rightful holder of

the Security Deed on the date of its merger with BAC.

The Security Deed explicitly grants the "successors and assigns of

MERS" the power of sale and "the right to foreclose and sell the Property" in

the event of Plaintiff's default ([21-2] at 3.)  Plaintiff does not contest that he

was behind on his mortgage payments.  (See generally, Am. Compl., Dkt. [14].)

Therefore, the Court agrees that on August 2, 2011, BOA had the authority to

foreclose on the Property and initiate sale proceedings.[4]

---

[4] To the extent Plaintiff is asserting a "splitting of the Note and Deed" theory of wrongful foreclosure, the claim fails.  This Court has previously found that Georgia law does not preclude the holder of a security deed from initiating foreclosure if it does not also hold the note.  See LaCosta v. McCalla Raymer, LLC, No. 1:10-CV-1171-RWS, 2011 WL 166902, at *5-6 (N.D. Ga. Jan. 18, 2011) (rejecting debtor's argument that the foreclosing entity must possess both the promissory note and the security deed); accord Alexis v. Mortg. Elec. Registration Sys., Inc., No. 1:11-CV-1967-RWS, 2012 WL 716161, at *3 (N.D. Ga. Mar. 5, 2012).

13

Next, Plaintiff alleges that BOA breached its duty to exercise fairly and in good faith the power of sale because BOA later rescinded the foreclosure. (Am. Compl., Dkt. [14] ¶¶ 32-33.)  Bank Defendants argue that this theory of wrongful foreclosure is deficient for multiple reasons.  First, Defendants maintain that no rescission occurred and Plaintiff cannot point to any duty or obligation to rescind owed to him by the Bank Defendants.  (Bank Def.s' MTD Am. Compl., Dkt. [16-1] at 9.)  Furthermore, any rescission would have occurred after the sale was complete, and therefore has no bearing on a claim for wrongful foreclosure.  (Bank Def.s' MTD Compl, Dkt. [6-1] at 8-9.)

Under Georgia law, "[p]owers of sale in deeds of trust, mortgages, and other instruments ... shall be fairly exercised."  O.C.G.A. § 23-2-114.  In practice, this requires that when the power of sale is exercised, the foreclosing party must advertise and sell the property according to the terms of the instrument, and the sale must be conducted in good faith.  Brown v. Freedman, 474 S.E.2d 73, 76 (Ga. Ct. App. 1996).  Here, Plaintiff alleges that BOA did not act in good faith because it represented to Plaintiff *after* the sale that the sale had been rescinded.  The Court agrees that BOA's alleged actions after the sale do not bear on a wrongful foreclosure claim.

14

Finally, Plaintiff alleges that the Notices of Sale were defective because the "owner of the loan" was never properly identified as required under O.C.G.A. § 44-14-162.2.  (Am. Compl., Dkt. [14] ¶ 35.)  Bank Defendants note that no foreclosure sale resulted from the October 2010 and November 2010 notices, and therefore these notices cannot serve as the basis for a wrongful foreclosure claim.  (Bank Def.s' MTD Compl., Dkt. [6-1] at 13-14.)  To the extent Plaintiff is alleging that these earlier notices constituted attempted wrongful foreclosures, Defendants argue that the August 2, 2011 sale extinguished any claims for attempted wrongful foreclosure and that Plaintiff has failed to allege the elements of a claim for attempted wrongful foreclosure.

The Court agrees with Defendants regarding the 2010 notices.  "To state a claim for attempted wrongful foreclosure under Georgia law, a plaintiff must show that a creditor knowingly and intentionally published untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication."  Sellers v. Bank of Am., N.A., No. 1:11-CV-3955-RWS, 2012 WL 1853005, at *3 (N.D. Ga. May 21, 2012).  Plaintiff has not alleged that Bank Defendants published any untrue or derogatory information concerning his financial condition.  Plaintiff

15

also has not alleged any damages sustained as a result of the 2010 notices.  And

finally, because a foreclosure sale has been completed, any attempted wrongful

foreclosure claim brought by Plaintiff is improper.  See Austin v. Bank of Am.,

N.A., No. 1:11-CV-3346-RWS, 2012 WL 928732, at *1 (N.D. Ga. Mar. 16,

2012) ("In Georgia, a claim for attempted wrongful foreclosure only exists

when a foreclosure action was commenced, but not completed....").

        With regard to the May 4, 2011 Notice of Foreclosure Sale ([14-1] at 12),

which did result in sale of the Property, Plaintiff alleges that the notice was

defective because the "owner of the loan" was never properly identified.  (Am.

Compl., Dkt. [14] ¶ 35.)  Bank Defendants respond that Plaintiff's claim fails

for two reasons: (1) Plaintiff cannot show that his damages, if any, were caused

by the foreclosure and not his failure to make payments on the loan; and (2)

Plaintiff fails to recognize the distinction between the "owner of a loan," the

holder of a promissory note, and the assignee of a security deed.  (Bank Def.s'

MTD Am. Compl., Dkt. [16-1] at 9-10.)

        Plaintiff alleges that he has "been damaged emotionally and financially

through the erroneous foreclosure of Property."  (Am. Compl., Dkt. [14] ¶ 37.)

However, as discussed above, BOA had the right to foreclose under the terms of

16

the Security Deed.  The Court agrees with Defendants that Plaintiff's alleged

damages were caused by his undisputed failure to make payments on the loan,

not by Bank Defendants' lawful actions.  Therefore, because he cannot show

the requisite causation, Plaintiff has not stated a claim for wrongful foreclosure

against Defendants based on defective notice.

In sum, all of Plaintiff's theories of wrongful foreclosure fail and the

claim is **DISMISSED** as to Bank Defendants.

### 2.    Quiet Title (Count II)

Plaintiff seeks to quiet title in his favor on grounds that he "is the owner

of Property; however, both BOA and [Freddie Mac] claim interest in the

Property.  The fact that both claim to hold interest in the loan creates a cloud

over the title which must be removed."  (Am. Compl., Dkt. [14] ¶ 40.)  Bank

Defendants contend that Plaintiff has not satisfied the strict requirements to

maintain an action under the Georgia Quiet Title Act, O.C.G.A. § 23-3-62, *et*

*seq.*  (Bank Def.s' MTD Am. Compl., Dkt. [16-1] at 18-19.)  The statute

requires that the petition to quiet title be verified and contain particular details

regarding the petitioner's interest in the land, as well as possible adverse

claimants' interests.  O.C.G.A. § 23-3-62(b).  The statute also requires that a

17

plat of survey of the land be filed with the petition.  O.C.G.A. § 23-3-62(c).

Bank Defendants assert that Plaintiff has not satisfied these requirements

because, among other reasons, Plaintiff failed to file a survey plat with his

Complaint and Amended Complaint.  (Bank Def.s' MTD Am. Compl., Dkt.

[16-1] at 18.)  The Court agrees that Plaintiff has not met the requirements to

bring an action under the Georgia Quiet Title Act.  Therefore, this claim is

**DISMISSED** as to Bank Defendants.

### 3.   Constructive Fraud (Count III)

Plaintiff alleges that Bank Defendants committed constructive fraud

when they represented to Plaintiff that he would not lose his home during his

loan modification evaluation, but foreclosed anyway.  (Am. Compl., Dkt. [14] ¶

43.)  Further, he alleges, BOA "fed Plaintiff false information" when it

represented that the foreclosure sale had been rescinded.  (Id. ¶ 44.)  This

conduct, according to Plaintiff, constituted an intentional misrepresentation by

BOA "and concealed their actions that led Plaintiff to believe that they had the

authority and desire to modify his loan."  (Id. ¶ 45.)

In Georgia, "[c]onstructive fraud consists of any act of commission,

contrary to legal or equitable duty, trust, or confidence justly reposed, which is

18

contrary to good conscience and operates to the injury of another."  O.C.G.A. §

23-2-51(b).  To state a claim for constructive fraud, "the plaintiff must prove

the existence of a confidential relationship" between the plaintiff and defendant.

Rowland v. Rowland, No. 1:04-CV-2068-TWT, 2005 WL 3096169, at *6 (N.D.

Ga. Nov. 18, 2005).  Bank Defendants argue that Plaintiff has failed to state a

claim for constructive fraud because Plaintiff has not alleged the existence of

any confidential relationship between Plaintiff and Bank Defendants.  (Bank

Def.s' MTD Compl., Dkt. [6-1] at 15-16.)

The Court agrees with Defendants.  Georgia courts, including this Court,

have consistently held that there is no confidential relationship merely because

of parties' relationship as lender and borrower or mortgagee and mortgagor.

See Brown v. Bank of Am., N.A., No. 2:12-CV-0132-RWS, 2013 WL 628599,

at *3 (N.D. Ga. Feb. 20, 2013).  Plaintiff has not shown any reason why the

Court should depart from the general rule here.  Therefore, Plaintiff's

constructive fraud claim is **DISMISSED** as to Bank Defendants.

### 4.    Promissory Estoppel (Count IV)

Plaintiff asserts a promissory estoppel claim based on BOA's alleged

promise that the foreclosure sale had been rescinded.  (Am. Compl., Dkt. [14]

¶¶ 47-48.)  "To prevail on a promissory estoppel claim, plaintiffs must show that (1) defendant made certain promises, (2) defendant should have expected that plaintiff[] would rely on such promises, (3) that plaintiff[] did in fact rely on such promises to [his] detriment, and (4) injustice can be avoided only by enforcement of the promise."  Canterbury Forest Ass'n v. Collins, 532 S.E.2d 736, 739 (Ga. Ct. App. 2000).  Bank Defendants argue that they did not make any promises to Plaintiff and that Plaintiff's reliance on BOA statements was not reasonable under the circumstances.  (Bank Def.s' MTD Compl., Dkt. [6-1] at 18-23.)

"Promissory estoppel requires reliance on a promise, rather than a representation of fact."  Pinnacle Port Cmty. Ass'n v. Orenstein, 872 F.2d 1536, 1543 (11th Cir. 1989).  Plaintiff's promissory estoppel claim rests on multiple statements by BOA's employee, Stephanie Beal; namely:

> I was able to reach the foreclosure attorney to confirm if the sale had occurred or not.  They told me that it had been sold, but it was possible to have it rescinded. I also spoke with the underwriter. . . . They put in an escalated request to have a foreclosure rescission, in addition to the one my supervisor made yesterday. ([14-2] at 2.)

> I contacted the foreclosure attorney for this file, and was informed by the manager there that the

> foreclosure has been rescinded. . . .Our system at
> Bank of America still reflects a foreclosure date of
> 08/02/11 and the loan is flagged as "foreclosure sale
> has occurred, loan not conveyed."  It may take some
> time, possibly around 48 hours, for this to be updated.
> ([14-2] at 4.)

Bank Defendants argue that these statements do not constitute promises to

Plaintiff that the foreclosure would be rescinded.  (Bank Def.s' MTD Compl.,

Dkt. [6-1] at 20.)  Rather, Ms. Beal was merely communicating her

understanding of the facts regarding rescission of the sale.  (Id.)

Bank Defendants also assert that Plaintiff's reliance on these statements,

even if they are construed as promises, was not reasonable.  (Id. at 20-23.)

First, they argue, Plaintiff could not have reasonably relied on any statement

that rescission was "possible."  (Id. at 21.)  Second, Defendants argue that

Plaintiff's reliance was unreasonable in light of the written agreement between

the parties (i.e., the Security Deed).  (Id.)  The Eleventh Circuit has found that

"[r]eliance is not reasonable if the clear and unambiguous provisions of the

written contract between the promisor and promissee served to place the

promissee on due notice that he could not thereafter reasonably rely upon any

words or other course of dealing to his inducement, other than a modification of

the agreement actually reduced to writing."  Sampson v. Washington Mut.

21

Bank, 453 Fed. App'x 863, 867 (11th Cir. 2011) (internal quotations omitted). Here, the Security Deed states: "Extension of the time for payment or modification of amortization of the sum secured by this Security Instrument granted by Lender to Borrower . . . shall not operate to release the liability of Borrower . . . ."  (Security Deed, Dkt. [21-3] ¶ 12.)  The Security Deed also says that, after proper notice, if Plaintiff does not cure his default before the date specified in the notice, the lender may require immediate payment in full and invoke the power of sale.  (Id. ¶ 22.)

The Court agrees that Plaintiff has failed to allege a promise by Bank Defendants and even if Ms. Beal's statements could be construed as promises, Plaintiff has failed to show reasonable reliance on those statements, given the clear terms of the Security Deed.[5]  Therefore, Plaintiff's promissory estoppel claim is **DISMISSED** as to Bank Defendants.

---

[5] The Court also questions whether Plaintiff has shown detrimental reliance on any promise or representation made by Bank Defendants.  Plaintiff simply states that he "lost money and time dealing with BOA's officials that had not [sic] interest in helping them to save their property."  (Am. Compl., Dkt. [14] ¶ 48.)  Plaintiff does not dispute that he was in default on his loan payments.  Therefore, Plaintiff's efforts to secure a modification and negotiate with BOA were beneficial to him and began before BOA represented that the foreclosure sale had been rescinded.  Notably, Plaintiff does not allege that he continued making payments under the loan or a modified loan agreement after the foreclosure sale.

5.    Fair Debt Collection Practices Act ("FDCPA") (Count V)

Plaintiff alleges that the Notices of Foreclosure sent by Defendant

Pendergast in October 2010 and November 2010 represented "a fraudulent

attempt to collect on debt" in violation of 15 U.S.C. § 1692e(10)[6] and §

1692f(6)(A)[7] because BAC did "not have standing to collect on a debt they

were not entitled to" and because the notices "wholly fail to mention any claim

of ownership on behalf of [Freddie Mac]."  (Am. Compl., Dkt. [14] ¶¶ 51-54.)

Bank Defendants contend that Plaintiff's FDCPA claim fails for three reasons:

(1) Plaintiff has not even alleged that Bank Defendants are "debt collectors"

under the FDCPA; (2) a foreclosure proceeding is not a "debt collection"

activity under the FDCPA; and (3) any claim based on the 2010 notices is time-

barred by the FDCPA's one-year statute of limitations.  (Bank Def.s' MTD Am.

Compl, Dkt. [16-1] at 18-19.)  The Court agrees with Bank Defendants that

Plaintiff's claim is time-barred.

---

[6] This subsection of the FDCPA prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

[7] This subsection of the FDCPA prohibits: "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest."

AO 72A
(Rev.8/82)

Section 1692k(d) states that an action to enforce liability under the FDCPA may be brought "within one year from the date on which the violation occurs." The Eleventh Circuit has found that an FDCPA claim accrues on the day after the alleged violation occurs. See Maloy v. Phillips, 64 F.3d 607, 608 (11th Cir. 1995) (applying calculation method under Fed. R. Civ. P. 6(a)). Here, the notices were dated October 1, 2010 and November 5, 2010. ([14-1] at 6-7.) Plaintiff did not file his original Complaint alleging an FDCPA violation until June 6, 2012. Therefore, this claim is clearly barred by the statute of limitations and is **DISMISSED** as to Bank Defendants.[8]

### 6. Emotional Distress Damages

Plaintiff requests damages for intentional infliction of emotional distress. Plaintiff alleges that "Defendants' actions were obviously intentional – they sent out the wrongful notices not once but three times, and, each time, they did not have the right to do so. Further, they made binding statements in which they committed blatant sabotage to the detriment of Plaintiff." (Am. Compl., Dkt. [14] ¶ 58.) To state a claim for emotional distress, Plaintiff must allege

---

[8] Plaintiff raises in his Response Brief [18] the argument that he received another notice in June 2011, which "starts a new clock on the statute of limitations." However, Plaintiff is precluded from raising new allegations and theories of relief in his brief that do not appear in his Amended Complaint.

that Defendants' conduct was "(1) intentional or reckless; (2) extreme and outrageous; and (3) the cause of severe emotional distress." Wilcher v. Confederate Packaging, Inc., 651 S.E.2d 790, 792 (Ga. Ct. App. 2007). "[O]nly where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" will a plaintiff prevail on a claim for intentional infliction of emotional distress. Garner v. Acad. Collection Serv., Inc., No. 3:04-CV-93-JTC, 2005 WL 642680, at *5 (N.D. Ga. Mar. 11, 2005). Bank Defendants argue that Plaintiff has failed to allege any of the elements for a claim of intentional infliction of emotional distress, and instead has made only conclusory allegations and recited Georgia case law on this cause of action. (Bank Def.s' MTD Compl., Dkt. [6-1] at 25.)

The Court agrees with Defendants. Even if the notices were deficient in some technical way, as Plaintiff alleges, there is no indication of extreme and outrageous conduct by Defendants. Plaintiff does not dispute that he was in default under his loan agreement. The Security Deed gave the lender and its representatives (BAC and BOA) authority to accelerate the debt and foreclose on the Property in the event of Plaintiff's default. Consequently, Bank

25

Defendants' efforts to collect on the debt owed by Plaintiff were neither extreme nor outrageous.  Therefore, this claim is **DISMISSED** as to Bank Defendants.

7.   <u>Injunctive Relief</u>

Plaintiff seeks to enjoin Freddie Mac from moving forward with any dispossessory actions.  (Am. Compl., Dkt. [14] ¶ 65.)  To obtain temporary injunctive relief, Plaintiff must demonstrate: (1) a substantial likelihood of success on the merits of the underlying case, (2) that he will suffer irreparable harm in the absence of an injunction, (3) that the harm suffered by him in the absence of an injunction would exceed the harm to the opposing party if an injunction were issued, and (4) that an injunction would not disserve the public interest.  <u>Johnson & Johnson Vision Care, Inc. V. 1-800 Contacts, Inc.</u>, 299 F.3d 1242, 1246-47 (11th Cir. 2002).  Defendants argue that Plaintiff has not shown a substantial likelihood of success on the merits of his underlying claims and he has not tendered any security as required by Rule 65(c).

Because the Court has dismissed all of Plaintiff's underlying claims as to Freddie Mac, Plaintiff cannot demonstrate a substantial likelihood of success on the merits.  Therefore, Plaintiff's request for injunctive relief is **DENIED**.

26

**B.      Defendant Pendergast**

Pendergast notes that it merely represented BOA as legal counsel in connection with the non-judicial foreclosure sale and argues that all of Plaintiff's claims against it should be dismissed pursuant to Rule 12(b)(6). (Pendergast MTD Am. Compl, Dkt. [15-1] at 7.)  Since Pendergast was not the foreclosing party and at no time held or asserted any interest in the Property, Plaintiff appears to assert most of his claims against Pendergast under an agency theory.  Notably, Plaintiff's theory of Pendergast's liability is not clear from the Amended Complaint.  In fact, the Amended Complaint contains only one specific allegation against Pendergast – that Pendergast sent fraudulent notices of foreclosure in October and November 2010 in violation of the FDCPA.  (Am. Compl., Dkt. [14] ¶¶ 51-52.)

Assuming, *arguendo*, that Plaintiff has sufficiently stated a claim for violation of the FDCPA against Pendergast, the claim is time-barred (see discussion in Part II.A.5, <u>supra</u>) and **DISMISSED**.  The Court finds that Plaintiff has failed to satisfy the basic requirements of notice pleading under Rule 8 with regard to all other claims against Pendergast.  Therefore, all claims against Pendergast are **DISMISSED**.

AO 72A
(Rev.8/82)

**III.     Plaintiff's Motion for Leave to Amend First Amended Complaint**

Plaintiff moves for leave to amend his Amended Complaint under Rule 15(a)(2).  Defendants argue that the motion should be dismissed because amendment would be futile and because Plaintiff has failed to allege any newly discovered information to warrant amendment.  (See Generally Def.s' Resp.s Opposing Pl.'s Mot. to Amend, Dkt. [23] and [24].)  The Court agrees with Defendants.

Although Rule 15(a)(2) says that leave to amend should be freely given, futility of amendment is justification for dismissal with prejudice.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Plaintiff's proposed Second Amended Complaint [21-1] does not contain any new factual allegations against Defendants.  The amendments simply elaborate on Plaintiff's prior legal arguments, cite additional law, and provide a more detailed discussion of damages suffered by Plaintiff.  The additional law cited by Plaintiff in his proposed Second Amended Complaint existed when Plaintiff filed his Complaint and Amended Complaint, and does not alter the Court's analysis of Plaintiff's claims.

28

The Court finds that Plaintiff has not presented any new facts or authority in his proposed amendments and based on the Court's analysis in Part II, <u>supra</u>, amendment would be futile.  Therefore, Plaintiff's motion for leave to amend is **DENIED.**

### Conclusion

Based on the foregoing, Bank of America and Freddie Mac's Motion to Dismiss Complaint [6] is **DENIED as moot** and Pendergast's Motion to Dismiss Complaint [7] is **DENIED as moot**.  Pendergast's Motion to Strike or Dismiss Amended Complaint [15] is **GRANTED** and Bank of America and Freddie Mac's Motion to Strike or Dismiss Amended Complaint [16] is **GRANTED**.  Finally, Plaintiff's Motion for Leave to Amend First Amended Complaint [21] is **DENIED**.

**SO ORDERED**, this <u>15th</u> day of March, 2013.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)